IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: TECNET, INC., ET AL., | § | |
| | § | |
| Debtors. | § | |
| | § | |
| _____ | § | |
| | § | |
| ENHANCED PREPAID | § | |
| DISTRIBUTION, LLC, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-0708-K |
| | § | |
| SCOTT SEIDEL, CHAPTER 7 | § | |
| TRUSTEE, | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Appellant Enhanced Prepaid Distribution, LLC ("EPD")'s appeal of the United States Bankruptcy Court's Findings of Fact and Conclusions of Law entered February 6, 2009. Therein, the bankruptcy court determined that EPD owed approximately $9 million in unpaid invoices to the bankruptcy estate of Debtor Enhanced Global Convergence Services, Inc. ("EGCS"). The bankruptcy court further held that EPD had not proven any actual damages flowing from the termination of the contract between EPD and EGCS, and was also not entitled to recover consequential damages. For the reasons stated herein, the bankruptcy court's judgment is **affirmed.**

1

I.  Factual and Procedural Background

In December 2003, EPD and EGCS entered into a contract for EGCS to provide and EPD to distribute prepaid telephone services.  Under the contract, EGCS was to provide EPD with PINs that would allow end users of those PINs to access telecommunications services.  As contemplated by the contract, EPD resold the PINs to sub-distributors and received a 3% commission for the PINs sold.

On appeal, EPD does not dispute that it failed to pay approximately $9 million in invoices issued by EGCS.  However, EPD asserts that because the network shut down on June 2, 2004, EGCS never delivered approximately $22 million in telecommunications services it was obligated to provide per the parties' agreement, thus causing it $12,000,939.00 in damages (the value of the allegedly undelivered network services, less the amount of the unpaid invoices).  In response, the Trustee argues that EPD re-sold all of the PIN numbers used to access those telecommunications services to its sub-distributors, and thus received 100% of the commissions it was entitled to under the parties' contract.  Therefore, the Trustee contends that EPD cannot show that it suffered any damages, as it sustained no out of pocket loss, and that EPD still owes the bankruptcy estate $9,468,883.22 in unpaid invoices.

The bankruptcy court ruled in the Trustee's favor, finding that because EPD resold all of the PINs and received all of the commissions it was entitled to under the terms of the contract, EPD could not prove that it was damaged even if some of the

2

services associated with the PINs were never provided to the downstream users of those PINs. Accordingly, the bankruptcy court determined that because EPD collected a full commission on the PINs provided, it still owed the bankruptcy estate approximately $9 million in unpaid invoices.

## II.   Standard of Review

The bankruptcy court's factual findings are reviewed under the clearly erroneous standard, while any questions of law are reviewed *de novo*. Fed. R. Bankr. P. 8013; *In re Whitaker Construction Co., Inc.,* 411 F.3d 197, 201 (5th Cir. 2005); *In re Chesnut,* 311 B.R. 446, 449 (N.D. Tex. 2004).

## III.   Review and Analysis

EPD presents 12 issues to the court on appeal. Most of these issues relate to the key question in this case – whether EPD owes the Trustee approximately $9 million or whether EPD has a valid claim for approximately $22 million in undelivered services. Moreover, many of these issues are partially or wholly duplicative of each other, as they re-frame the core dispute in slightly different ways. For brevity, the court will consolidate its discussion of the issues where possible. The court's analysis of these issues is as follows:

### A.   Issues 1 and 2

When considered together, EPD's first two issues on appeal concern whether it was entitled under the contract to more than just a 3% commission on the PINs it sold,

and that EGCS was actually required to provide telecommunications services to EPD. Therefore, EPD contends that instead of owing the Trustee approximately $9 million in unpaid invoices, it is actually owed approximately $12 million when the amount of those unpaid invoices is deducted from the approximately $22 million in services EPD contends it should have received per the terms of the contract. EPD asserts that the bankruptcy court erred by determining that it was not entitled under the agreement to the actual provision of services.

The court disagrees. The contract states that EGCS "will provide access to the Prepaid Calling System for [EPD]'s resale of the Prepaid Telecommunications Services..." It is undisputed that EGCS did provide such access to EPD in the form of PINs, which EPD did resell. EPD received its 3% commission for the resale of the services (as represented by the PINs). By attempting to recover for the value of actual undelivered services, EPD attempts to stand in the shoes of the downstream users who may not have received those services. However, EPD itself has no right to such services under the contract, as it has already received the benefit of its bargain by reselling the PINs and collecting its commission. The bankruptcy court did not err in finding that EPD is entitled only to its 3% commission under the terms of the contract, and that EPD still owes the trustee approximately $9 million in unpaid invoices for PINs that EPD admittedly sold and earned a commission on.

B.  Issues 3, 4 and 5

In its third and fourth issues, EPD argues that the bankruptcy court erroneously held that EPD is basing its counterclaim on the lost value of services to the end users of the PINs, when it should have interpreted the contract to require EGCS to provide services to EPD, and further found that EPD had the right to receive such services, not just a 3% commission flowing from their resale.  EPD's fifth issue relates to this same question – EPD asserts that the bankruptcy court erred by finding that the contract permitted no recovery for consequential damages or damages to other parties, when EPD was entitled to the delivery of telecommunications services per the contract.

The court disagrees, and finds no error by the bankruptcy court with regard to issues 3-5.  The contract explicitly requires EGCS to provide EPD with access to the services for a particular purpose:  EPD's resale of the services.  As contemplated by the agreement, EPD received and resold that access, and when it did, it was the end users of the services who may have experienced lost value, not EPD.  Therefore, EPD received the benefit of its bargain, which was its 3% commission payment.  If others who were not parties to the contract lost value due to the network shutdown, EPD has no right of recovery for such losses.

C.  Issues 7-11

EPD's issues 7 through 11 all relate to the bankruptcy court's findings that EPD did not present sufficient evidence of its alleged damages, and that EPD actually owes

5

the Trustee approximately $9 million in unpaid invoices. These issues are essentially a re-casting of EPD's position that it was entitled by contract to receive actual services from EGCS, and because the network shut down, EPD did not receive approximately $22 million in services owed.

As the court has already ruled, the bankruptcy court correctly held that EPD was not entitled by contract to receive services; therefore it did not prove damages from the alleged loss of such services. Therefore, whether EPD "proved" such a loss is immaterial, as it was never entitled to recover for any such loss. Further, EPD did not dispute the unpaid invoices, and even used the amount of the unpaid invoices in arriving at its final damages figure. The bankruptcy court did not err as complained of by EPD in issues 7 through 11.

### D.     Issue 12

Finally, EPD argues that the bankruptcy court erred by relying on the contract's provision barring consequential damages, when EPD's claimed damages were only for the benefit of its bargain. As the court has stated above, EPD's view is that its damages are the amount of undelivered services it did not receive, less the amount of the unpaid invoices. Both the bankruptcy court and this court have found that EPD did receive the benefit of its bargain - a 3% commission on all of the PIN value it resold. Thus, the bankruptcy court correctly held that EPD has no damages, and still owes the Trustee approximately $9 million for unpaid invoices.

6

### IV.     Conclusion

For the foregoing reasons, the bankruptcy court's ruling in this matter is hereby **affirmed.**  The clerk is hereby directed to prepare, sign and enter the judgment pursuant to Bankruptcy Rule 8016(a).

**SO ORDERED.**

Signed February 8th, 2010.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE

7